Marini, Appellant, v. Frick Coke Co.

Argued April 21, 1930.

Before TREXLER,
P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM, BALD-
RIGE and GRAFF, JJ.

*Anthony Cavalcante,* and with him *Linn V. Phillips,*
for appellant, cited: Berskis v. Lehigh Val. Coal Co.,
273 Pa. 243; Fillip v. Wm. Cramp & Sons, 80 Pa. Su-
perior Ct. 68.

*Buell B. Whitehill* of *Jones, Whitehill & Lane,* for
appellee, cited: Johnston v. Payne-Yost Construction
Co., 292 Pa. 509; Massett v. Armerford Coal M. Co.,
82 Pa. Superior Ct. 579.

OPINION BY BALDRIGE, J., July 10, 1930:
On May 25, 1928, Frank Marini, while in the defend-
ant's employ, was injured by being struck in the eye
by a foreign substance. Compensation agreement was
entered into under which he was paid compensation
until August 1, 1928, and on August 21, 1928, he signed

a final receipt and returned to work. The claimant filed a petition for modification of the agreement on October 24, 1928, alleging a total loss of the use of his left eye. Two hearings were held, the first in Uniontown, November 23, 1928, and the second in Pittsburgh, November 26, 1928. The conclusiveness of the final receipt was waived and admission made by the defendant that there was a condition in the claimant's left eye which caused loss of industrial vision. It was contended, however, by the defendant that the loss of vision was not permanent and that the condition of the eye had improved and was improving under treatment being furnished by the defendant and that further treatment might restore industrial vision and that the claimant had not at any time since August 1, 1928, been incapable of working. The referee dismissed the petition, and upon appeal, the Workmen's Compensation Board affirmed the findings of fact as made by the referee, and the exceptions filed thereto were dismissed by the court of common pleas.

The appellant's first contention is that as he did not have industrial vision at the time of the hearing, compensation should have been allowed. Section 306 (c) of the Workmen's Compensation Act of 1915, P. L. 736, as amended by the Act of 1927, P. L. 186, provides compensation for "Permanent loss of the use of an ...... eye," and that "Permanent loss of the use of an ...... eye ...... shall be considered as the equivalent of the loss of such ......, eye."

There was competent testimony offered upon the part of the defendant to establish the finding that there was not a *permanent* loss of industrial vision of the claimant's left eye. Dr. Lowe, who treated the claimant from May 25th to the time of the hearing, November 23, 1928, and who saw him on numerous occasions, testified for the defendant that although there was a loss of workable vision, the opacity was decreasing under treatment and that there was a pos-

siblity of restoring industrial vision, as fifty to seventy-five per cent of the patients thus afflicted recover their sight. Dr. Heckel, who examined the claimant, appeared at the hearing, was sworn, and gave testimony which coincided with the opinions expressed by Dr. Lowe.

The defendant offered the claimant, free of charge, medical treatment recommended by the doctors until such time as it could be determined whether or not the vision could be restored. As the referee, on competent evidence, found as a fact that there was not a permanent loss of claimant's left eye, he is not entitled to compensation under Section 306, Paragraph (c), supra: Massett v. Armerford C. Mining Co., 82 Pa. Superior Ct. 579. If the eye does not yield to treatment and becomes useless for the employment for which the claimant is fitted, then he may apply for compensation, but under the present record we cannot hold that the claimant's industrial vision is permanently lost.

The next contention of the appellant is that compensation for the loss of the industrial vision was not allowed for the reason that he had not shown any loss of earning power. We do not understand that that question is involved in this case. The referee found as a fact that prior to the injury, the claimant's average weekly wage was $41.80 and that after he returned to work, he was paid at the rate of $19.80 per week. If there had been a permanent loss of the right eye, the compensation would not be affected by the earning power as claimant would be paid for a definite number of weeks: Berskis v. Lehigh Valley Coal Co., 273 Pa. 243. The question for determination, however, was not the loss of earning power, and the compensation was not refused on that ground, but for the reason that there was not the permanent loss of the use of the eye as contemplated by the Act at the time of the hearing.

This brings us to the last contention of the appellant that the testimony of Dr. Heckel should not have been

considered in determining this case as his testimony was taken at Pittsburgh instead of Uniontown where the first hearing was had. When the original hearing was adjourned, the referee gave notice that the case would be continued for a hearing to be held at Pittsburgh on November 26, 1928, at 11:00 o'clock A. M., for the purpose of taking testimony of Dr. Heckel. Under sections 417 and 424 of the amending Act of June 26, 1919, P. L. 642, 662 and 664, the compensation authorities are authorized to "fix a time and place for hearing claims." This does not give unlimited or arbitrary power to the compensation authorities to impose unfair conditions so that claimants may be subjected to great inconvenience or financial burdens, but reasonable discretion must be exercised as to the place and time of hearing so that justice may not be unduly delayed or defeated, or made too costly.

In the case of Seitzinger v. Fort Pitt Brewing Co., 294 Pa. 253, cited by appellant, the petition was heard by a referee at Pittsburgh and resulted in an award in claimant's favor. On an appeal, the Workmen's Compensation Board, against the protest of the claimant, ordered a hearing de novo at Philadelphia. The hearing was fixed there for the purpose of affording claimant an opportunity to cross-examine Dr. Carnett who had been called by the board to give his professional opinion as to whether the complaint of which deceased had died was due to the accident. Neither the claimant nor the defendant attended, or was represented at the Philadelphia hearing, and, without formally taking the testimony of the witness, the board acted upon a written statement of his views and reversed the referee's award. Claimant appealed to the court of common pleas and that tribunal ordered the case sent back to the board for further hearing and disposition. Later, the board held a meeting in Pittsburgh where additional testimony for the claimant was taken, and the board for the second time, over the

plaintiff's renewed protest, ordered another hearing at Philadelphia, where Dr. Carnett was duly sworn and stated that his views were the same as formerly expressed. That was the extent of the hearing. The board filed an adjudication disallowing the award of the referee. The court held that this action was an abuse of discretion in setting the hearing over three hundred miles away at the other end of the state in the face of the claimant's protest and known destitution. Mr. Chief Justice MOSCHZISKER, in the course of his opinion, said, ''We cannot say that it is not within the power of the compensation authorities to change the place of hearing from one district to another; but, unless such a change is agreed to by the claimant, the reasons which impel it should appear of record and be of a nature to justify the action of the board; otherwise, the principal purpose of the act, to afford to injured employes and their dependents a more efficient measure of protection than was given to them under the law as it existed prior to the passage of this legislation, would be substantially defeated.''

The facts before us are quite dissimilar to those appearing in that case. No objection appears upon the record at the close of the hearing at Uniontown when the adjournment was had to November 26, 1928, in Pittsburgh. A letter was written, dated December 6, 1928, by an attorney for the claimant to the referee calling attention to the fact that the claimant did not agree to an adjournment to Pittsburgh, stating, further, ''We have no objection to the continuance of the hearing at Uniontown at any time that it would suit your or Dr. Heckel's convenience. Of course, we are in no position to object to an ex-parte hearing which you might want to hold in Pittsburgh without the claimant or his counsel being present, but we do object to being marked present in the record when we were not nor to say that this hearing was held by the

agreement of counsel when it was done in spite of our objection."

In the Seitzinger case, the court called attention to the fact that the record shows very plainly that the board's conclusion rested entirely upon the opinion expressed in Dr. Carnett's report. In the instant case, the testimony of Dr. Heckel corroborated only the testimony of Dr. Lowe and if he had not testified there was sufficient competent testimony upon which to base the conclusion reached by the referee: Carlin v. Coxe Bros. & Co., Inc., 274 Pa. 38 (41); Vorbnoff v. Mesta Machine Co., 286 Pa. 199. The referee stated that an offer was made to the claimant to pay his expenses incident to holding a meeting in Pittsburgh. Be that as it may, we do not think, in view of Pittsburgh's promixity to Uniontown, and under all the circumstances, that there was such an undue hardship imposed upon the claimant as to warrant this court in holding that there was an abuse of discretion upon the part of the referee.

The judgment is affirmed.